UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rocky Ratliff,

    Plaintiff,

v.

The Ohio State University,

    Defendant.

Case No. 2:19-cv-4746

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

Rocky Ratliff ("Plaintiff") sues The Ohio State University ("Ohio State") based on sexual abuse he suffered at the hands of Dr. Strauss ("Strauss") while a student at Ohio State. Am. Compl., ECF No. 18. Plaintiff brings a Title IX claim under various theories: (1) hostile environment; (2) deliberate indifference; (3) heightened risk; and (4) retaliation.[1] *See, e.g.*, Am. Compl. ¶¶ 114–33, ECF No. 18. It appears Plaintiff bases each Title IX theory on both the abuse by Strauss and the highly sexualized environment that generally existed within Larkins Hall. *Id.* Plaintiff also arguably asserts a stand-alone claim of fraudulent

---

[1] Plaintiff includes some allegations and arguments that Ohio State failed to report or investigate the complaints about Strauss's abuse. To the extent Plaintiff intends to bring a failure-to-report theory under Title IX, Plaintiff offers nothing to suggest the Sixth Circuit recognizes such a theory separate from the theories Plaintiff already asserts. If, on the other hand, Plaintiff intends to assert a failure-to-report claim under the Clery Act, that cannot succeed because the Clery Act does not provide a private right of action. *See* 20 U.S.C. § 1092(14)(A) ("Nothing in this subsection may be construed to . . . create a cause of action against any institution of higher education or any employee of such an institution for any civil liability.").

concealment, *id.* ¶¶ 134–46, and a claim for violation of his Fourteenth Amendment Substantive Due Process rights by way of 42 U.S.C. § 1983. *Id.* ¶¶ 157–551. Ohio State moves to dismiss the Amended Complaint. Mot. Dismiss, ECF No. 21.

## I. Title IX Claims Based on Strauss's Abuse

First, Plaintiff's Title IX claim based on hostile environment, deliberate indifference, and heightened risk fails for the reasons stated in the Opinion and Order in *Garrett v. The Ohio State University*, Case No. 2:18-cv-692, to the extent the claim is based on Strauss's abuse of Plaintiff. The reasoning in the Court's Opinion and Order in *Garrett* applies equally here, as Plaintiff's Amended Complaint alleges that he attended Ohio State from 1995–1997 and was sexually assaulted by Strauss approximately twelve times during his time there. *Id.* ¶¶ 43–44. Plaintiff's Complaint in this case was not filed until October 25, 2019, and, therefore, under either the occurrence rule or the discovery rule, his Title IX claim under these theories is time-barred.

Plaintiff offers two arguments in opposition to dismissal based on the statute of limitations that were either not raised or not fully developed in *Garrett*, so the Court addresses them herein. Namely, Plaintiff argues that his claim is not barred by the statute of limitations under the continuing violations theory and under the equitable doctrine of unclean hands.

The continuing violations doctrine does not save Plaintiff's claims. It is worth noting, first, that it is unclear whether the continuing violations doctrine

even applies to Title IX claims. *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017) ("Some courts suggest it does. *See, e.g., Stanley v. Trs. of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). Others suggest it doesn't. *See, e.g., Folkes v. New York Coll. of Osteopathic Med.*, 214 F. Supp. 2d 273, 288–91 (E.D.N.Y. 2002)."). Plaintiff cites no case where the continuing violations doctrine has been applied to a Title IX claim.[2]

However, even assuming the doctrine does apply in Title IX cases, Plaintiff's allegations would not trigger it. The continuing violations doctrine is "an exception to the ordinary rule regarding the commencement of a statute of limitations, [that] allows for tolling based on continuing unlawful acts." *Norman v. Granson*, No. 18-4232, 2020 WL 3240900, at *2 (6th Cir. Mar. 25, 2020) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982)). The Sixth Circuit has recognized two categories of continuing violations: "(1) 'those alleging serial violations' and (2) 'those identified with a long-standing and demonstrable policy of discrimination.'" *Id.* (citing *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003)). For either category, a continuing violation exists only when three requirements are met: "(1) 'the defendant's wrongful conduct must continue after

---

[2] Plaintiff cites *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587 (W.D. Mich. May 26, 2017) as a case that "supports a conclusion that the continuing violations theory is applicable to the case at bar and precludes dismissal." Reply 23, ECF No. 26. The Court disagrees with this interpretation. If anything, *Bowling* is another example of the uncertainty regarding whether the continuing violations doctrine applies to Title IX cases, and that court simply analyzes the issue *in case* it does. *See id.* at *2 ("This Court need not decide whether the continuing violation doctrine applies in the context of Title IX, because even if it does, Bowling's allegations show that it does not apply.").

the precipitating event that began the pattern,' (2) 'injury to the plaintiff must continue to accrue after that event,' and (3) 'further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct.'" *Id.* (citing *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)).

Plaintiff points to "[Defendant]'s continuing assertion of no wrongdoing by Dr. Strauss, coupled with [Defendant]'s continued failure, until May 2019 to report wrongdoing as required by Title IX and the Clery Act, and its admission in its letter that it did not take action necessary to protect its students over the years" as evidence of a continuing violation. Reply 25, ECF No. 26. Plaintiff argues that "he has been harmed by an actual policy of discrimination held by the Defendant, or a series of acts performed by Defendant, to wit, continued concealment of and/or cover up of and denial and refusal to report sexual abuse and other unlawful conduct," noting that "each day that such a policy is in force is a new violation." *Id.* at 26.

Regardless of which category of continuing violation Plaintiff attempts to invoke, Plaintiff's argument fails because he is unable to identify any specific discriminatory act within the limitations period. Both categories require a specific discriminatory act to have been suffered *during* the applicable limitations period. *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991), *abrogated on other grounds by Sharpe*, 319 F.3d at 268 ("[The first] category requires a 'current' as well as 'continuing' violation: at least one of the forbidden discriminatory acts

must have occurred within the relevant limitations period."); *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) (The second category requires, in addition to a longstanding and demonstrable policy of discrimination, that plaintiff allege they have "suffered a specific discriminatory act within the applicable limitations period." (citations omitted)).

Plaintiff relies repeatedly on the Sixth Circuit's opinion in *Roberts v. North American Rockwell Corporation*, 650 F.2d 823, 827 (6th Cir. 1981), to support his continuing violations argument. Specifically, Plaintiff maintains that *Roberts* stands for the proposition that "the statute of limitations begins anew each day that the discriminatory policy remains in existence." Reply 24, ECF No. 26. However, the holding in *Roberts* has since been clarified and limited by the Sixth Circuit. *Roberts* requires that "a plaintiff prove some specific discriminatory act within the limitations period, not merely the existence of a discriminatory policy, to show a continuing violation." *Wellons v. Nw. Airlines, Inc.*, 25 F. App'x 214, 219 (6th Cir. 2001) (citing *Dixon*, 928 F.2d at 217). Plaintiff alleges no such specific act during the statutory limitation period that would spark a continuing violation to make these claims timely. Indeed, all of Plaintiff's allegations relate to his time as a student at Ohio State, where Ohio State's actions caused him to "experience further sexual molestation, assault, abuse, and harassment and/or [become] more vulnerable to it into the future," be "deprived . . . of access to the educational opportunities or benefits provided by OSU," and which "effectively barred [Plaintiff's] access to educational opportunities and benefits, including a

safe educational environment and appropriate medical care." Am. Compl. ¶¶ 115, 116, 119, ECF No. 18. None of these claims by Plaintiff alleges any policy that is presently impacting Plaintiff, or has impacted Plaintiff in the statutory period, and, therefore, these claims cannot justify a continuing violation.

One claim by Plaintiff is pleaded as touching the present. Plaintiff alleges that because of Ohio State's actions:

> Plaintiff has suffered and continues to suffer emotional distress, physical manifestations of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life, which will continue into the future. Also, Plaintiff was prevented from and continues to be prevented from obtaining the full enjoyment of life. Plaintiff has sustained and continues to sustain loss of earnings and earning capacity. Finally, Plaintiff has incurred various personal expenses.

Am. Compl. ¶ 117, ECF No. 18; *see also id.* at ¶¶ 133, 551. While the Court has no doubt about the truth of Plaintiff's claims, they unfortunately do not make the continuing violations theory applicable in this case. The doctrine is clear that "limitations periods begin to run in response to discriminatory *acts* themselves, not in response to the continuing *effects* of past discriminatory acts." *Dixon*, 928 F.2d at 216 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980), and *United Airlines v. Evans*, 431 U.S. 553, 557 (1977)). Because Plaintiff's only present allegation regards the continuing effects of acts that occurred while he was a student at Ohio State, outside of the limitations period, these effects do not trigger a continuing violation.

Indeed, the Ninth Circuit addressed a similar continuing violations argument in *Stanley v. Trustees of California State University,* 433 F.3d 1129 (9th Cir. 2006). There, after the plaintiff alleged that she suffered sexual harassment at the hands of Richard Savino, her professor and faculty advisor, she brought suit against the trustees of her university for Title IX claims. *Id.* at 1137. The Ninth Circuit found that the continuing violation doctrine could not save her claims. For her hostile environment Title IX claims, the court noted that the plaintiff "[had] not alleged that the University caused her to undergo, or be vulnerable to, any harassment during the limitations period, a time when she was not present at the University." *Id.* at 1137. The court further noted that "we have never held the presence of an individual in a workplace or institution *where the plaintiff is not present* constitutes a hostile environment. The mere speculation that if she had returned the environment would have been hostile is not sufficient to establish an 'act' by a defendant within the limitations period." *Id.* (emphasis added). While the Sixth Circuit has yet to address the continuing violations doctrine's applicability to Title IX cases, the reasoning from *Stanley* is persuasive. Accordingly, the continuing violations theory is inapplicable to this case.

Neither does the clean hands doctrine aid Plaintiff. Under the clean hands doctrine, "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). That is, the clean hands doctrine prevents a party from asserting an equitable claim or

defense if that party is "tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Id.*

A statute of limitations defense, however, is a *legal* defense, not an equitable one. *See Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 719 (6th Cir. 1994) (describing the statute of limitations as an "absolute legal defense"); *Allen v. Abbott Labs.*, No. CIV.A. 11-146-DLB, 2012 WL 10508, at *7 (E.D. Ky. Jan. 3, 2012) (noting that the statute of limitations is an "absolute legal defense"); *see also Rushing v. Yazoo Cty.*, No. 3:18CV764TSL-RHW, 2020 WL 4587047, at *8 (S.D. Miss. May 8, 2020), *aff'd sub nom. Rushing v. Yazoo Cty. by & through Bd. of Supervisors of Yazoo Cty.*, No. 20-60462, 2021 WL 2390378 (5th Cir. June 10, 2021) (rejecting an argument that the clean hands doctrine could bar a statute of limitations defense because the statute of limitations is a legal defense). Because the statute of limitations is a legal, not equitable defense, the clean hands doctrine is also inapplicable.

## II. Title IX Claims Based on Environment at Larkins Hall

To the extent Plaintiff asserts a Title IX hostile environment, deliberate indifference, or heightened risk claim against Ohio State based on the sexually hostile environment that generally existed in Larkins Hall *apart* from Strauss's abuse, the Court concludes such claim is similarly untimely.

Plaintiff's Amended Complaint states that he and the other wrestlers used Larkins Hall during the time they were enrolled at Ohio State. *See* Am. Compl. ¶ 8, ECF No. 18. It further alleges that, at Larkins Hall, numerous individuals

would, *inter alia*, "shower with the wrestlers, stare at the wrestlers, and excessively lather their genital area." *Id.* ¶ 9. Some even masturbated in the shower area. *Id.* ¶ 10. People would also watch the wrestlers from bathroom stalls or while in the sauna, and many would explicitly solicit the victim-students for dates or sexual activity. *Id.* ¶¶ 10–11. "Members of the OSU wrestling team and OSU wrestling coaching staff consistently discovered male on male sexual encounters in the locker room, bathroom, sauna facilities, spiral staircase, and wrestling room." *Id.* ¶ 12. In fact, the hostile environment was so blatant that Plaintiff's head wrestling coach talked to the wrestlers about how "they needed to look out for one another in Larkins Hall" and stated that he was "doing everything possible to get the wrestling team to a new facility and a better training environment." *Id.* ¶ 52.

Accordingly, Plaintiff has pleaded that he was aware of the sexually hostile environment in Larkins Hall—which, by his own admission "was so severe, pervasive, and objectively offensive that it deprived [Plaintiff] of access to his educational opportunities and/or benefits provided by [Ohio State]," *id.* ¶ 123— during the time he was enrolled at Ohio State. He was also on notice that the head coach was attempting to work with the University to secure a new facility for the team given the hostile environment, which is enough to put Plaintiff on notice at that time that Ohio State was likely aware of the complaints regarding the hostile environment. Accordingly, to the extent Plaintiff's Title IX claims are based on the general environment at Larkins Hall, as opposed to the prolific

abuse perpetrated by Strauss specifically, the claim is still untimely for the reasons stated in the *Garrett* Opinion and Order, which apply equally to the general environment at Larkins Hall.

### III. Title IX Retaliation Claim

Plaintiff also brings a Title IX retaliation claim based on actions that occurred in 2019. Am. Compl. ¶¶ 148–56. Defendant moves to dismiss the retaliation claim, *inter alia*, on the basis that Plaintiff has not alleged he suffered any adverse school-related action. Mot. Dismiss 17, ECF No. 21.

Defendant is correct. Although the Sixth Circuit has never established the elements of a Title IX retaliation claim in a published case, it has assumed (in both published and unpublished opinions) that "a Title IX plaintiff must show that (1) [s]he engaged in protected activity; (2) [the funding recipient] knew of the protected activity; (3) [s]he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action." *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020) (internal quotation marks and citation omitted; alterations in original).

Here, Plaintiff does not allege (nor could he) an adverse school-related action because the alleged retaliation took place decades after Plaintiff graduated. *See* Am. Compl. ¶¶ 149–56, ECF No. 18. This claim therefore fails.

### IV. 42 U.S.C. § 1983 Claim

Plaintiff's § 1983 claim fails as well because, *inter alia*, Ohio State is entitled to Sovereign Immunity.

The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State." U.S. Const. Amend. XI. "It has long been settled that the Eleventh Amendment applies not only to suits brought against a State by a citizen of 'another State,' but also to suits brought by a citizen against the State in which he or she resides." *Lee Testing & Eng'g, Inc. v. Ohio Dept. of Transp.*, 855 F.Supp.2d 722, 725 (S.D. Ohio 2012) (citing *Hans v. Louisiana*, 134 U.S. 1(1890)). Thus, the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). When suits are filed against state agencies or state officials in their official capacities, they "should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

Here, it is undisputed that Ohio State is an arm of the State of Ohio. *See Galli v. Morelli*, 277 F. Supp. 2d 844, 856, n. 13 (S.D. Ohio 2003) ("[T]his Court has repeatedly concluded that OSU is an 'arm or alter ego' of the State of Ohio, and thus protected by the Eleventh Amendment."). Consequently, Ohio State is immune from suit under the Eleventh Amendment.

Plaintiff's arguments to the contrary fail to persuade. First, Plaintiff argues that Congress abrogated Eleventh Amendment immunity when it passed Title IX.

The Court agrees with Plaintiff that this is well settled. However, Plaintiff's argument regarding Title IX is irrelevant to whether Ohio State is entitled to Sovereign Immunity for Plaintiff's § 1983 claim. Plaintiff's contention that Congress abrogated Eleventh Amendment immunity in § 1983 claims is incorrect. *E.g., Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) ("That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern*.").

Plaintiff next asserts that a state waives Eleventh Amendment immunity for § 1983 claims. This is a misstatement of the law. Although a state *may* waive its sovereign immunity in a § 1983 suit, Ohio State has not done so here and has, instead, specifically invoked sovereign immunity as a defense.

Third, Plaintiff contends that § 1983 allows for monetary damages against state employees. While this is accurate insofar as sovereign immunity is no bar to suits for monetary relief against state employees in their personal capacities, Plaintiff is suing only a state entity, not a state employee. Accordingly, this argument is inapposite.

Finally, Plaintiff argues that the Eleventh Amendment does not bar prospective injunctive relief. It seems that Plaintiff is trying to invoke the *Ex parte Young* exception, under which "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008) (quotation marks

and internal citations omitted). However, the *Ex parte Young* exception applies only to state officials, not to state entities. *Id.*; *see also Sims v. Univ. of Cincinnati,* 46 F. Supp. 2d 736, 737 (S.D. Ohio 1999), *aff'd,* 219 F.3d 559 (6th Cir. 2000) (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996)) ("The type of relief sought is irrelevant to the issue of whether a suit against the state or a state agency is barred by the Eleventh Amendment."). Because Plaintiff is suing only a state entity—and because he does not seek injunctive relief—he cannot rely on the *Ex parte Young* doctrine to save his claims.

For each of the above reasons, Plaintiff's § 1983 claim is barred by sovereign immunity and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## V.  Fraudulent Concealment

Finally, Plaintiff's fraudulent concealment claim fails. To begin, to the extent that Plaintiff asserts a fraudulent concealment claim as an independent cause of action, that claim is dismissed without prejudice. As discussed herein, all of Plaintiff's federal claims have been dismissed. The remaining fraudulent concealment claim is a state-law claim, and so the Court declines to exercise its supplemental jurisdiction over it.

Although the Court does have discretion to maintain supplemental jurisdiction, "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Rouster v. Cty. of Saginaw,* 749 F.3d 437, 454 (6th Cir. 2014); *see also Osborn v. Haley,* 549 U.S.

225, 245 (2007). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claim. . . ." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). A district court shall "consider and weigh several factors" when determining whether to exercise supplemental jurisdiction, including the "values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). District courts can also consider factors such as: whether the plaintiff engaged in manipulation by dismissing federal claims; whether discovery had been completed; the degree of familiarity the court has with the issues; and if the court had invested significant time in the decision. *Gamel*, 625 F.3d at 952.

On balance, the Court finds the weight of these factors is against the continued exercise of supplemental jurisdiction. Although the Court does have familiarity with this case, the other factors weigh against the continued exercise of supplemental jurisdiction over the state-law claim. First, all federal claims have been dismissed, and only a state-law claim remains. Second, while the Court may have presided over this case for almost two years, the case is still in relative infancy; for example, the parties have not yet submitted a Rule 26(f) report, and no pre-trial deadlines have been set. Third, whether Ohio courts even recognize a stand-alone claim for fraudulent concealment is an unclear issue best left for the state courts to determine. *Compare Richards v. St. Thomas Hosp.*, 492 N.E.2d 821, 824, n.3 (1986) (stating that, outside of statute,

there is no claim for fraudulent concealment) *with Milner v. Biggs*, 522 F. App'x 287, 294 (6th Cir. 2013) (analyzing a claim for fraudulent concealment under the same standard as a claim for fraud). Finally, there is "a strong presumption in favor of dismissing supplemental claims" once the federal claims have been dismissed. *Musson Theatrical, Inc.*, 89 F.3d at 1255. These factors taken together weigh against the continued exercise of supplemental jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over any stand-alone state-law fraudulent concealment claim.

Neither does fraudulent concealment toll the statute of limitations on Plaintiffs' Title IX claim in this case, for the reasons addressed in *Garrett*.

## VI. Leave to Amend

Plaintiff's request for leave to amend is denied because amendment would be futile.

## VII. Conclusion

For the reasons addressed above, Plaintiff's Title IX claim is **DISMISSED WITH PREJUDICE**. Plaintiff's § 1983 claim and fraudulent concealment claim are **DISMISSED WITHOUT PREJUDICE**. The Clerk shall enter judgment for Defendant and terminate this case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**